1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY CASTRO,

11          Petitioner,          No. CIV S-08-2390-MCE-TJB

12       vs.

13   M. MARTEL,

14          Respondent.          ORDER, FINDINGS AND RECOMMENDATIONS

15   _____/

16                      I.  INTRODUCTION

17       Petitioner Anthony Castro is a state prisoner proceeding pro se with a petition for writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  For the following reasons, (1) Petitioner's requests

19   for judicial notice are granted; (2) it is recommended that the habeas petition be denied; and (3) it

20   is recommended that Petitioner's claims that should be raised in a civil rights action under §

21   1983, and not in a § 2254 habeas petition, be dismissed without prejudice.

22                      II.  BACKGROUND

23       Petitioner is currently serving a life sentence for murder and assault with a deadly

24   weapon, with an enhancement for use of a firearm in the commission of a crime.  Resp't's

25

26

1

1 Answer Ex. 1, at 3, ECF No. 31.[1]  He is in the custody of the California Department of

2 Corrections and Rehabilitation, following his 1979 conviction by jury in the Kern County

3 Superior Court.  *Id.*

4         With this petition, Petitioner does not challenge his underlying conviction and sentence.

5 Rather, he challenges two prison disciplinary actions against him for:  (1) misuse of a computer

6 (C11/06-067), Resp't's Answer Ex. 5, pt. 1, at 39-40; and (2) disobeying a direct order (C12/06-

7 052).  *Id.* at 79, 81-83.

8         A.  Misuse of a Computer (C11/06-067)

9         Instructor P. Babrah stated in her rules violation report that on November 14, 2006, she

10 observed Petitioner "changing the configuration on the computer."  *Id.* at 39.  According to

11 Instructor Babrah, Petitioner "altered the Mavis Beacon Typing Test from an adult typing level to

12 a child typing level for ages 5 to 8 years old.  This test is used to document typing scores on the

13 128-E for student's typing progress in the Office Services Program."  *Id.*  Instructor Babrah

14 reported that on August 7, 2006, Petitioner "signed his job description and the Inmate/Student

15 Computer Use form," and "is aware of his responsibilities to perform his job assignments and not

16 to change any configurations on the computer."  *Id.*

17         A hearing took place on December 5, 2006.  *Id.* at 40.  Petitioner pleaded not guilty and

18 stated, "I was browsing to practice another test.  I may have accidentally selected that option."

19 *Id.*  The senior hearing officer found Petitioner guilty because of "Petitioner's admission of guilt

20 to the written charge at the time of the hearing, specifically:  'I was browsing to practice another

21 test.  I may have accidentally selected that option.'"  *Id.*  The violation was reduced to a CDC-

22 

23 _____

[1] The Case Management/Electronic Case Files (CM/ECF) docketing and file system is implemented, which allows the parties to electronically file pleadings and documents.  For pleadings or documents submitted in paper format, the filing is scanned and stored electronically into the CM/ECF system.  Each page of the electronic filing is numbered chronologically, whether or not the party numbered it.  If the filing is lengthy, the document is divided into parts. Here, when a page number for a filed pleading or document is cited, the CM/ECF page number is used when available, which may not coincide with the page number used by the parties.  *But see infra* note 2.

2

1    128A violation, and Petitioner "was counseled and reprimanded." *Id.*

2    On February 15, 2007, the second level denied Petitioner's administrative appeal. *Id.* at

3    72. The second level reasoned that Petitioner "had signed and agreed to specific work

4    expectations . . . not to manipulate the setting of the computer." *Id.* That denial stated, "This

5    response constitutes final action of this appeal per 3084.7(b)(1)." Resp't's Answer Ex. 5, pt. 1, at

6    72.

7    B. Disobeying a Direct Order (C12/06-052)

8    Officer H. Medina stated in his rules violation report that on December 13, 2006, he "was

9    walking pas[t] Vocational Office Services when Ms. Babrah, the Instructor, came out of the class

10   and stated to [him], 'Could you explain to [Petitioner] he needs to get down during an alarm?'"

11   *Id.* at 79. Officer Medina reported that he "instructed [Petitioner] to get down during an alarm,"

12   and "[Petitioner] complied with [his] order." *Id.* In a supplemental report, Officer Medina

13   elaborated:

14
> Ms. Babrah stated that when she walked by the inmate bathroom[,]
> she saw [Petitioner] standing at the mirror. She told him to come

15
> out and sit down. [Petitioner] looked at her and smiled, then
> turned back towards the mirror. Ms. Babrah was aware of the fact

16
> that [Petitioner] claims that he is hearing impaired and had told
> [Petitioner] to wear his hearing aid. [Petitioner] was still standing

17
> when Officer Medina came into Ms. Babrah's class. [Petitioner]
> did not get down until ordered by Officer Medina.

18

19   *Id.* at 83.

20   A hearing was conducted on December 29, 2006. *Id.* at 81. Petitioner pleaded not guilty

21   and stated:

22
> I was using the restroom. I did not hear her . . . . I am ADA
> Hearing Impaired. I only heard her one time and one time only.

23
> When I did hear her[,] I responded by coming out of the restroom.
> I took two steps to the nearest computer so that I would not be in

24
> the path of officers, then I got down. In the process of getting
> down she called Officer Medina. The OSS policy and practice is to

25
> not come out of the restroom during the code.

26   *Id.* Petitioner requested four witnesses, which included Instructor Babrah, Officer Medina,

3

1    Inmate Jesperson, and Inmate Lujano. *Id.*  These requests were granted, except for Inmate

2    Jesperson, who "did not witness this occurrence." *Id.*  The senior hearing officer found

3    Petitioner guilty, and the violation was reduced to an administrative level CDC-115 violation for

4    which Petitioner "was counseled and reprimanded." *Id.* at 83.

5         On March 6, 2007, the second level denied Petitioner's administrative appeal. *Id.* at 92.

6    That denial stated, "[Petitioner] is advised that this issue may be submitted for a Director's Level

7    of Review if desired." *Id.* at 93.  On March 27, 2007, Petitioner filed his appeal at the director's

8    level, *id.* at 95, but on June 12, 2007, Petitioner's appeal was returned to him because "[t]he

9    Second Level of Review is considered the department's final action in regard to Rules Violation

10    Reports classified as Administrative." *Id.* at 97.

11         C.  State Habeas Petitions

12         On February 13, 2008, Petitioner filed a habeas petition in the Amador County Superior

13    Court challenging the two disciplinary actions. *See* Resp't's Answer Ex. 1.  On April 8, 2008,

14    the Superior Court denied the petition, stating "the record reflects that some evidence supports

15    said disciplinary actions." *See* Resp't's Answer Ex. 4, at 63 (citations omitted).

16         On June 16, 2008, Petitioner filed a habeas petition in the California Court of Appeal,

17    Third Appellate District. *See* Resp't's Answer Ex. 5.  On June 19, 2008, the Court of Appeal

18    denied the habeas petition without comment or citation. *See* Resp't's Answer Ex. 6, at 2.

19         On July 29, 2008, Petitioner filed a habeas petition in the California Supreme Court. *See*

20    Resp't's Answer Ex. 7.  On October 1, 2008, the California Supreme Court denied the habeas

21    petition, with only a citation to *In re Dexter*, 25 Cal. 3d 921, 160 Cal. Rptr. 118, 603 P.2d 35

22    (1979).  Resp't's Mot. To Dismiss Ex. 1, at 7, Mar. 17, 2009, ECF No. 9. *In re Dexter* held that

23    "a litigant will not be afforded judicial relief unless he has exhausted available administrative

24    remedies." 25 Cal. 3d at 925, 160 Cal. Rptr. 118, 603 P.2d 35.

25         D.  Federal Habeas Petition

26         On October 9, 2008, Petitioner filed the instant federal habeas petition.  On March 17,

1   2009, Respondent filed the first of two motions to dismiss because "[t]he California Supreme

2   Court based its [habeas] denial on [Petitioner's] failure to exhaust his administrative remedies."

3   Resp't's Mot. To Dismiss 4, Mar. 17, 2009.  On April 9, 2009, Petitioner filed an opposition to

4   the motion.  *See* Pet'r's Opp'n, Apr. 9, 2010, ECF No. 13.  The record does not show that

5   Respondent filed a reply.

6          On November 19, 2009, the Honorable Craig M. Kellison, the assigned magistrate judge

7   at the time, issued findings and recommendations denying the motion to dismiss because

8   "[P]etitioner did exhaust all administrative remedies available to him."  Findings and

9   Recommendations 2-3, Nov. 19, 2009, ECF No. 16 (noting:  (1) for proceedings on misuse of

10   computer, second level "denial specifically states that '[t]his response constitutes final action of

11   this appeal per 3084.7(b)(1);'" and (2) for proceedings on disobeying direct order, Petitioner's

12   appeal to director's level was returned because "the second level review is considered the final

13   action for that type of violation").  On December 4, 2008, Respondent filed a request to withdraw

14   the motion to dismiss, *see* Resp't's Req., Dec. 4, 2008, ECF No. 17, which was granted on

15   December 15, 2008.  *See* Order 1-2, Dec. 15, 2008, ECF No. 19.

16          On January 25, 2010, Respondent filed a second motion to dismiss, arguing that "the

17   [p]etition should be denied for lack of federal habeas jurisdiction."  Resp't's Mot. To Dismiss 2,

18   Jan. 25, 2010, ECF No. 22.  Respondent asserted that because "the prison disciplinaries did not

19   result in a credit loss," they "do not affect the legality or duration of [Petitioner's] confinement."

20   *Id.*  On February 24, 2010, Petitioner filed an opposition to the motion, *see* Pet'r's Opp'n, Feb.

21   24, 2010, ECF No. 23, and Respondent filed a reply on March 5, 2010.  *See* Resp't's Reply, Mar.

22   5, 2009, ECF No. 24.  On March 30, 2010, Petitioner also filed three requests for judicial notice.

23   *See* Pet'r's Reqs., Mar. 30, 2010, ECF Nos. 25-27.

24          On July 1, 2010, the Honorable Craig M. Kellison, the assigned magistrate judge at the

25   time, issued findings and recommendations denying the second motion to dismiss because

26   "[e]xpungement of [Petitioner's] conviction for the rules violation, if warranted, is both likely to

1  accelerate his eligibility for parole, and could potentially affect the duration of [his]

2  confinement."  Findings and Recommendations 3, July 1, 2010, ECF No. 29 (internal citations

3  and quotation marks omitted).  The district court adopted the findings and recommendations in

4  full on July 28, 2010.  *See* Order 1-2, July 28, 2010, ECF No. 30.  On August 25, 2010,

5  Respondent filed an answer, to which Petitioner filed a traverse on October 8, 2010.

6              III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

7          An application for writ of habeas corpus by a person in custody under judgment of a state

8  court can be granted only for violations of the Constitution or laws of the United States.  28

9  U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

10 *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

11 This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

12 the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

13 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999).  Under

14 AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

15 state court proceedings unless the state court's adjudication of the claim:

16          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
17          determined by the Supreme Court of the United States; or

18          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
19          State court proceeding.

20 28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

21 *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

22          In applying AEDPA's standards, the federal court must "identify the state court decision

23 that is appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

24 "The relevant state court determination for purposes of AEDPA review is the last reasoned state

25 court decision."  *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted).

26 "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

1   orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v.*

2   *Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts

3   must conduct an independent review of the record to determine whether the state court clearly

4   erred in its application of controlling federal law, and whether the state court's decision was

5   objectively unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).  "The

6   question under AEDPA is not whether a federal court believes the state court's determination

7   was incorrect but whether that determination was unreasonable--a substantially higher

8   threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

9   "When it is clear, however, that the state court has not decided an issue, we review that question

10  *de novo*."  *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

11  545 U.S. 374, 377 (2005)).

## IV.  REQUESTS FOR REVIEW

13      Petitioner requests judicial notice of:  (1) the hearing decision fact sheet and proposed

14  decision by the Board of Parole Hearings (the "Board"), *see* Pet'r's Req., Mar. 30, 2010, ECF

15  No. 25; (2) the Board's hearing transcript from the July 11, 2002, hearing, *see* Pet'r's Req., Mar.

16  30, 2010, ECF No. 26; and (3) the Board's hearing transcript from the August 27, 2008, hearing.

17  *See* Pet'r's Req., Mar. 30, 2010, ECF No. 27.  Respondent has not filed any objection to the

18  requests.

19      Federal Rule of Evidence 201(b) provides that "[a] judicially noticed fact must be one not

20  subject to reasonable dispute in that it is either (1) generally known within the territorial

21  jurisdiction of the trial court[;] or (2) capable of accurate and ready determination by resort to

22  sources whose accuracy cannot reasonably be questioned."  Here, Respondent has not objected to

23  Petitioner's requests for judicial notice of the hearing decision fact sheet, the proposed decision,

24  and the transcripts, which are "capable of accurate and ready determination" as to their accuracy.

25  FED. R. EVID. 201(b).  Judicial notice of the hearing decision fact sheet, the proposed decision,

26  and the transcripts is granted.

1    This matter is now ready for decision.  For the following reasons, it is recommended that

2  habeas relief be denied.  It is further recommended that Petitioner's claims that should be raised

3  in a civil rights action under § 1983, and not in a § 2254 habeas petition, be dismissed without

4  prejudice.

5                               V.  CLAIMS FOR REVIEW

6    The petition for writ of habeas corpus sets forth three grounds for relief based on:  (1) due

7  process violations; (2) First Amendment violations; and (3) discriminatory retaliation.  Pet'r's

8  Pet. 11-29, ECF No. 1.[2]  Some of Petitioner's three grounds fo relief overlap.  To the extent

9  possible, the grounds resolved by binding authority are grouped together.  Ground two is

10  referenced more than once as it refers to separate issues.  Petitioner's grounds are addressed as

11  follows:

12         1.  Grounds One and Two:  Due Process

13         2.  Grounds Two and Three:  First Amendment and Discriminatory Retaliation

14         A.  State Court Decision

15    Here, it is undisputed that Petitioner presented all three claims to the Superior Court, the

16  Court of Appeal, and the California Supreme Court, and the petition is exhausted.  *See* Resp't's

17  Answer Exs. 1, 5, 7.  However, it is unclear whether a reasoned state court decision explaining

18  denial of the claims exists.  "The question of which state court decision last 'explained' the

19  reasons for [judgment] is therefore relevant only for purposes of determining whether the state

20  court decision was 'contrary to' or an 'unreasonable application of' clearly established federal

21  law as required by § 2254(d)."  *Bailey v. Rae*, 339 F.3d 1107, 1113 (9th Cir. 2003).

22    As the last assigned magistrate judge found, the California Supreme Court improperly

23  denied Petitioner's claims on procedural grounds with only a citation to *In re Dexter*, 25 Cal. 3d

24

25         [2] Although Petitioner's habeas petition was scanned into the CM/ECF system, its pages
   were not assigned chronological CM/ECF page numbers.  Here, the cited petition pages are the
26  numbers Petitioner assigned.

8

1   921, 160 Cal. Rptr. 118, 603 P.2d 35 (1979). *See* Findings and Recommendations, Nov. 19,

2   2009.  The California Supreme Court never reached the merits of Petitioner's claims and did not

3   issue a reasoned decision.  *See* Resp't's Mot. To Dismiss Ex. 1, at 7, Mar. 17, 2009.

4          The Court of Appeal reached the merits of Petitioner's claims, as it denied the petition

5   without comment or citation.  *See, e.g.*, *Hunter v. Aispuro*, 982 F.2d 344, 347-58 (9th Cir. 1992)

6   ("[T]he California Supreme Court's denial of a habeas petition without comment or citation

7   constituted a decision on the merits of the federal claims, and thus such claims would be subject

8   to review in federal habeas proceedings.").  However, the Court of Appeal's decision provided

9   no reasons for denial, as it contained no comment or citation, and is not a reasoned opinion.  *See*

10  Resp't's Answer Ex. 6, at 2.

11         The Superior Court's decision came the closest to a reasoned opinion.  The Superior

12  Court stated, in full:

13              The Court has read and considered the petition for a writ of habeas
                corpus filed by [Petitioner], an inmate at Mule Creek State Prison.
14              The Court, having read and considered the petition, informal
                response, reply to informal response, and supporting documents,
15              hereby denies the petition.

16              The petitioner contests two disciplinary actions.  However, the
                record reflects that some evidence supports said disciplinary
17              actions.  (In re Powell (1988) 45 Cal.3d 894, 904; In re Ramirez
                (2004) 94 Cal.App.4th 549, 563.)
18
                Therefore, based on the foregoing, the petition is denied.
19
                IT IS SO ORDERED.
20

21  Resp't's Answer Ex. 4, at 63-64.  At best, the Superior Court's decision addressed part of

22  Petitioner's due process claims, since the Superior Court found that "some evidence supports

23  said disciplinary actions."  *Id.* at 63.  The Superior Court, however, did not fully address

24  Petitioner's due process claims, nor did it issue a reasoned opinion on Petitioner's second and

25  third claims on First Amendment violations and discriminatory retaliation.

26         Since it is unclear whether any state court issued a reasoned opinion, an independent

9

1  review of the record is conducted to determine whether the Superior Court, which issued a denial

2  most closely resembling a reasoned opinion, clearly erred in its application of controlling federal

3  law, and whether its decision was objectively unreasonable.  *See Delgado*, 223 F.3d at 981-82

4  (conducting "independent review of the record" where "the state court does not supply reasoning

5  for its decision"); *see also Delgadillo*, 527 F.3d at 925 ("The relevant state court determination

6  for purposes of AEDPA review is the last reasoned state court decision." (citations omitted)); *cf.*,

7  *e.g.*, *Bailey*, 339 F.3d at 1113 ("We need not resolve that question" of "which state court decision

8  last 'explained' the reasons for judgment" because there, the petitioner "is entitled to relief

9  regardless of which state court decision we review.").

10              B.  Grounds One and Two:  Due Process

11                  1.  Petitioner's Claims

12          In ground one, Petitioner argues his due process rights were violated during his

13  disciplinary action for misuse of a computer.  Accordingly to Petitioner, there was an improper:

14  (1) "change in fact-finders in the middle of a hearing;" (2) "unofficial presence of anyone who

15  previously participated in producing the disciplinary reports or investigations;" and (3) "refusal

16  to permit a defense by failing to accept documentary evidence."  Pet'r's Pet. 18.  Petitioner

17  asserts that on November 22, 2006, Sergeant Bond initiated the hearing, which "was continued,

18  with the Petitioner's consent for one week . . . .  However, C/Sgt. Bond did not return . . . the

19  following week and, two weeks later, C/Sgt. Peterson commenced a new and different hearing on

20  this disciplinary [action]" at which "a second C/Sgt., identified as F. Garrett, was present."  *Id.* at

21  12, 15.  "Based on advise [sic] from C/Sgt. Garrett, the HO refused to accept Petitioner's

22  documentary evidence, with the exception of his written statement . . . ."  *Id.* at 15.  Petitioner

23  contends since "C/Sgt. F. Garrett is the same person who initially reviewed and approved the

24  disciplinary action on November 17, 2006," Sergeant Garrett had a predetermined belief of

25  Petitioner's guilt and should not have been present during this hearing.  *Id.* at 16.

26          In ground two, Petitioner alleges his due process rights were violated during his

1  disciplinary action for disobeying a direct order.  According to Petitioner, the senior hearing

2  officer "show[ed] bias and prejudice, if not falsehood in reporting." *Id.* at 21.  Petitioner asserts

3  the senior hearing officer failed to record the "determination that [Instructor Babrah] was not

4  being completely truthful in her statements at the hearing" on disobeying a direct order. *Id.* at 20.

5  According to Petitioner, Instructor Babrah testified that "'about 5 minutes' elapsed between the

6  time the 'Code 1 was announced to when [Petitioner] got down.'" *Id.* (citation omitted).  After

7  Instructor Babrah finished testifying, Petitioner claims the senior hearing officer informed

8  Petitioner "he had checked the prison's log prior to commencing the hearing and determined the

9  Code was secure within one minute of activation as a 'false alarm.'" *Id.* at 20-21 (citation

10  omitted).  Petitioner asserts that "[p]roduction of those logs will confirm this analysis." *Id.* at 21.

11  Petitioner also contends that Instructor Babrah failed to "inform the SHO" that procedures

12  "posted in her classroom directly instructs '[i]nmates . . . to immediately sit in their seats' upon

13  activation of a code . . . ." *Id.* (citation omitted).

14                    2.  Legal Standard for Due Process

15        Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be

16  diminished by the needs and objectives of the institutional environment. *Wolff v. McDonnell*,

17  418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution,

18  so a prisoner is not afforded the full panoply of rights in such proceedings. *Id.* at 556.  Thus, a

19  prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.

20  *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing *Superintendent, Mass. Corr. Inst.*

21  *at Walpole v. Hill*, 472 U.S. 445, 454-455 (1984)).

22        "Where a prison disciplinary hearing may result in the loss of good time credits, *Wolff*

23  held that the inmate must receive:  (1) advance written notice of the disciplinary charges; (2) an

24  opportunity, when consistent with institutional safety and correctional goals, to call witnesses

25  and present documentary evidence in his defense; and (3) a written statement by the factfinder of

26  the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454 (citing

11

1   *Wolff*, 418 U.S. at 563-67).  In addition, due process requires that the decision be supported by

2   "some evidence."  *Id.* at 455 (citing *United States ex rel. Vajtauer v. Comm'r of Immigration*,

3   273 U.S. 103, 106 (1927)).  The "some evidence" standard is not particularly stringent and is

4   satisfied where "there is any evidence in the record that could support the conclusion reached."

5   *Id.* at 455-56.  A violation of prison regulations does not give rise to a due process claim as long

6   as these minimum protections have been provided.  *See Walker v. Sumner*, 14 F.3d 1415, 1419-

7   20 (9th Cir. 1994).

8           Further, a hearing conducted by a biased hearing officer may violate a prisoner's due

9   process rights.  *Wolff*, 418 U.S. at 571.  To support a claim of bias, a petitioner must demonstrate

10  actual bias or the appearance of bias.  *See Taylor v. Hayes*, 418 U.S. 488, 501 (1974).  Bias

11  cannot be shown from an adverse ruling in a pending case:  the alleged bias must be from an

12  extrajudicial source.  *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008).

13                  3.  Analysis of Due Process Claims

14          Here, Petitioner's due process rights were not violated.  First, the record reflects that

15  Petitioner received copies of all non-confidential documents, including written statements of the

16  violations, at least twenty-four hours prior to the hearing.  *See* Resp't's Answer Ex. 5, pt. 1, at 40,

17  80.

18          Second, the record reveals that Petitioner had "an opportunity, when consistent with

19  institutional safety and correctional goals, to call witnesses and present documentary evidence in

20  his defense."  *Hill*, 472 U.S. at 454.  For his hearing on misuse of a computer, Petitioner contends

21  the senior hearing officer only accepted "one of eight exhibits Petitioner attempted to enter into

22  evidence."  Pet'r's Pet. 17.  *But see* Resp't's Answer Ex. 5, pt. 1, at 40 (stating, in hearing report,

23  that "[a]ll documented evidence was reviewed and considered").  Accordingly to Petitioner,

24  "[t]he only one the HO accepted was Petitioner's written statement," i.e., Exhibit A.  Pet'r's Pet.

25  17.  In Exhibit A, Petitioner referred to the other seven exhibits, summarized them, and stated for

26  what purpose they served.  *See*, *e.g.*, Resp't's Answer Ex. 5, pt. 1, at 57 (citing exhibit B to show

1    Petitioner did not "change . . . the configuration to the computer); *id.* (citing exhibit F to show

2    another individual had allegedly "witnessed Ms. Babrah's voice tone and words as being

3    unprofessional toward [Petitioner]); *id.* at 58 (citing exhibits C, D, E, F, G, and H to

4    "demonstrat[e] and indicat[e] that Ms. Babrah has presently targeted [Petitioner] for

5    harassment"); *id.* at 59 (explaining exhibit C is a "memorandum" that "documented" the

6    "harassment of [Petitioner] by Ms. Babrah").

7         Specifically, the other documents include the following, none of which are certified or

8    authenticated:

9         1.   Exhibit B is a declaration by Bradley Schrader, V-57388. *Id.* at 60.  Schrader

10             declared he has a "Masters Degree in Aeronautics and Astronautics from Stanford

11             University," and "it is [his] professional opinion that selecting standard options in the

12             Mavis Beacon typing program, definitely, does not change the computer's

13             configurations." *Id.*

14        2.   Exhibit C is a memorandum that Petitioner prepared documenting a "pattern of

15             physical, material, verbal and psychological abuse by Ms. Babrah towards

16             [Petitioner]." *Id.* at 63.  Alleged incidents include, *inter alia*, when Instructor Babrah:

17             (1) "walked up to [Petitioner] and rudely pulled [a] book out of [Petitioner's] hand"

18             and "tossed the book" so it "f[e]ll to the floor," *id.* at 61; (2) "made [Petitioner] wait

19             last for his [identification] card;" *id.*; and (3) repeatedly yelled at Petitioner. *Id.* at 62-

20             63.

21        3.   Exhibit D is a declaration by Tony Formbly, V-96196. *Id.* at 64.  Formbly declared he

22             was, at the time, "an OSS Student" who observed "OSS students practice their

23             typing." *Id.*  According to Formbly, a week before November 14, 2006, Petitioner

24             "asked [him] if he could also practice his typing on said computer." *Id.*  Formbly

25             responded, "'As long as no one is type testing, yes you could.'" *Id.*  Formbly added,

26             "It is up to [Petitioner] as to what level he wants to practice" his typing. *Id. But see*

1    *infra* p. 16.

2       4.   Exhibit E is a declaration by David McVey, P-57366. *Id.* at 65-66. McVey declared,

3            *inter alia*, that Instructor Babrah "behaved disrespectfully," "made snide remarks to

4            [McVey]," and "rolled her eyes up in the air repeated[ly] while [McVey was]

5            speaking." *Id.* at 65.

6       5.   Exhibit F is a declaration by Martin Barnett, T-48897. *Id.* at 67. Barnett declared that

7            "if called to testify, [he] will testify that Ms. Babrah's tone of voice[] [and] words

8            were said in such a way as to make her conduct toward [Petitioner] unprofessional."

9            *Id.* Barnett further stated, "in the past, the TA's have altered the type test to a child

10           level for me." *Id.*

11      6.   Exhibit G is a declaration by Randy Becktold, F-08877. *Id.* at 68. Becktold declared

12           that "Ms. Babrah is unprofessional towards inmates in class who she does not care

13           for[,]" and "she did appear to target [Petitioner] for some reason." *Id.*

14      7.   Exhibit H is a declaration from Eddie M. Vargas, Sr., K-63463. *Id.* at 69. Vargas

15           declared he informed Instructor Babrah he "was not interested in being in [her] class"

16           because he "would rather have a job with a pay number." *Id.* Vargas asserted that

17           "[f]rom then on," she singled him out in class, "constantly spied" on him, paid "extra

18           attention" to him, and "openly criticized" him. *Id.*

19      "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and

20  present documentary evidence in his defense when permitting him to do so will not be unduly

21  hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Prison officials

22  have the "discretion to keep the hearing within reasonable limits." *Ponte v. Real*, 471 U.S. 491,

23  496 (1985) (quoting *Wolff*, 418 U.S. at 566). For example, "[a]lthough we do not prescribe it, it

24  would be useful for the Committee to state its reason for refusing to call a witness, whether it be

25  for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S.

26  at 566.

1    Here, there is no evidence the senior hearing officer only "accepted" Exhibit A into

2    evidence, aside from Petitioner's own statements.  The hearing report stated that "[a]ll

3    documented evidence was reviewed and considered."  Resp't's Answer Ex. 5, pt. 1, at 40.  Even

4    if the senior hearing officer only accepted Exhibit A, the senior hearing officer was within his

5    discretion to do so.  *See Ponte*, 471 U.S. at 496.  Exhibit A summarized the other exhibits and

6    placed them into context in Petitioner's case, making the other exhibits "irrelevan[t]" or not

7    necessary.  *See Wolff*, 418 U.S. at 566.  Further, as stated earlier, none of the exhibits were

8    certified or authenticated.

9    Rather, the record shows Petitioner was able to "to call witnesses and present

10   documentary evidence" at both of his hearings.  *Hill*, 472 U.S. at 454.  For his hearing on misuse

11   of a computer, Petitioner did not request any witnesses, and as stated earlier, the hearing report

12   indicated that "[a]ll documented evidence was reviewed and considered."  Resp't's Answer Ex.

13   5, pt. 1, at 40.  For his hearing on disobeying a direct order, Petitioner's request for four

14   witnesses was granted, with the exception of Inmate Jesperson, because "Inmate Jesperson did

15   not witness this occurrence."  *Id.* at 81.  Petitioner's due process rights were not violated because

16   he was allowed to call witnesses and present documentary evidence in his defense.

17   Third, each hearing was held within thirty days of the respective rule violation.  *Id.* at 39-

18   40, 79, 81-83.  A report was issued after each hearing, setting forth the evidence on which the

19   senior hearing officer relied in finding Petitioner guilty.  *Id.* at 40, 81-83.

20   Fourth, "some evidence" supports both disciplinary actions.  *Hill*, 472 U.S. at 455.  The

21   record shows some evidence supports the senior hearing officer's finding of guilt for misuse of a

22   computer.  Title 15, section 3041(d) of the California Code of Regulations states:  "Inmates

23   assigned to educational, vocational, or other training programs must cooperate with the instructor

24   or the person in charge, and must comply with instructions, and all requirements for participation

25   in the assigned activity."  Here, the record shows Petitioner signed and dated a form titled,

26   "Inmate/Student Computer Use," on August 7, 2006, over three months prior to the alleged

15

1    violation.  Resp't's Answer Ex. 5, pt. 1, at 41.  This form states, *inter alia*:

2                  The student will utilize only Microsoft Word, Excel, Access, and
                   PowerPoint.  Do not "explore" these programs unless you are
3                  working on an assignment.

4                  Students are not allowed to change any configurations in the
                   computer, examples include:  screen savers, desktops, task bars.
5
                   . . . .
6
                   At times you may use another student's computer.  You must
7                  confirm with your instructor and obtain the student's approval
                   prior to this temporary computer use.
8
                   It is your responsibility to ask questions.  If you are not sure . . .
9                  ASK!  Before you click, delete, or try something . . . ask.

10   *Id.* at 41-42.  The bottom of the form, right above where Petitioner signed and dated, states:

11                 I have read, understand, and am willing to follow all of the rules
                   for computer use in the Vocational Education Office Services
12                 class.  I understand any violation or any non-compliance will result
                   in disciplinary action.  I am aware if I receive a CDC115, a chrono
13                 will be placed in my 'C' file to deny further access to any use of
                   computers while in CDC.
14

15   *Id.* at 42.  The record indicates, and Petitioner admitted, that he "was browsing to practice

16   another test" and "may have accidentally selected that option," without Instructor Babrah's

17   permission.  *Id.* at 40.  The record also shows Petitioner knew he could not change any

18   configurations on the computer.

19         Some evidence also supports the senior hearing officer's finding of guilt for disobeying a

20   direct order.  Title 15, section 3005(b) of the California Code of Regulations states: "Inmates and

21   parolees must promptly and courteously obey written and verbal orders and instructions from

22   department staff, and from employees of other agencies with authorized responsibility for the

23   custody and supervision of inmates and parolees."  Here, the record shows Petitioner ignored a

24   direct order from Instructor Babrah to "get down" during a "code one alarm."  Resp't's Answer

25   Ex. 5, pt. 1, at 79.  The Superior Court's decision that "some evidence" supported the senior

26   hearing officers' findings of guilt was not an unreasonable application of clearly established

1   federal law.  *Hill*, 472 U.S. at 455.

2          Finally, Petitioner failed to bring forth any evidence of actual bias on the senior hearing

3   officer's part.  Nothing in the record, aside from Petitioner's own assertion, indicates the senior

4   hearing officer told Petitioner that the "Code was secure within one minute of activation as a

5   'false alarm.'"  Pet'r's Pet. 20-21.  Even if this occurred, it is irrelevant.  The senior hearing

6   officer was aware Instructor Babrah's testimony slightly differed from Officer Medina's

7   testimony as to when Petitioner "got down" during the code alarm.  *See id.* at 20.  Petitioner

8   claims Instructor Babrah testified that fives minutes lapsed between the time the code alarm was

9   announced to when Petitioner "got down."  *Id.*  Officer Medina, however, testified "[i]t was

10  approximately 1½ to 2 minutes" from "when the Code 1 was announced until [Petitioner]

11  complied with [his] order and got down."  Resp't's Answer Ex. 5, pt. 1, at 81.  Further, the

12  hearing report reveals Instructor Babrah did tell the senior hearing officer about inmate

13  procedures during alarm codes, since Petitioner questioned her about it:

14              [PETITIONER]:  Why were you telling me to come out of the
                restroom during the Code 1 when you never tell other inmates to
15              come out as OSS policy?

16              [INSTRUCTOR BABRAH]:  The day before we had a safety
                meeting and I told them that they needed to be sitting in a chair.
17              They cannot be standing or walking around.

18              [PETITIONER]:  Why didn't you tell the inmates in the math
                workshop to come out of the workshop?
19
                [INSTRUCTOR BABRAH]: I have no idea other than they were
20              sitting.  Standing looking into a mirror is not complying with the
                code.
21

22  *Id.* at 82.  Without any other evidence, this does not give rise to an objective appearance of bias.

23  Production of prison logs is unnecessary, and Petitioner's due process claims are without merit.

24          C.  Grounds Two and Three:  First Amendment and Discriminatory Retaliation Claims

25          In ground two, Petitioner claims his First Amendment rights were violated because "[t]he

26  normal limits or range of disciplinary actions authorized in California prisons do[] not include:

                                              17

1  (1) refusal to recognize [Petitioner's] ADA status; . . . and[] ([2]) denial of assistance to one with

2  [a] disability[,] and no access to a particular are[a] of the prison necessary for his defense."

3  Pet'r's Pet. 24.  In ground three, Petitioner argues "[t]he discrimination and retaliation evidence

4  throughout these prison proceedings made it impossible for [Petitioner] to receive a fair hearing."

5  *Id.* at 28.

6      Generally, a prisoner's complaint that prison officials are violating the prisoner's First

7  Amendment rights must be raised in a civil rights action under § 1983, and not in a § 2254

8  habeas petition.  *See*, *e.g.*, *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam)

9  ("Challenges to the validity of any confinement or to particulars affecting its duration are the

10  province of habeas corpus [;] . . . requests for relief turning on circumstances of confinement may

11  be presented in a § 1983 action."); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)

12  (listing First Amendment claims cognizable in § 1983 civil rights actions).

13      Likewise, discriminatory retaliation claims must be raised in a civil rights action under §

14  1983, and not in a § 2254 habeas petition.  *See*, *e.g.*, *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.

15  1995) ("The district court correctly found that Ninth Circuit case law has recognized that

16  retaliation claims like [the petitioner's] state a valid cause of action under § 1983."); *see also*,

17  *e.g.*, *Woods v. Smith*, 60 F.3d 1161, 1163 (5th Cir. 1995); *Jones v. Coughlin*, 45 F.3d 677, 678-79

18  (2d Cir. 1995); *Sprouse v. Babcock*, 870 F.2d 450, 451 (8th Cir. 1989); *Cale v. Johnson*, 861

19  F.2d 943, 948-51 (6th Cir. 1988); *Franco v. Kelly*, 854 F.2d 584, 585 (2d Cir. 1988); *Hines v.*

20  *Gomez*, 853 F. Supp. 329, 329 (N.D. Cal. 1994).

21      A federal court has discretion to construe a mislabeled habeas corpus petition as a civil

22  rights action and permit the action to proceed as such.  *See Wilwording v. Swenson*, 404 U.S.

23  249, 251 (1971) (per curiam) (holding state prisoners' habeas petitions, which challenged their

24  living conditions and disciplinary measures and did not seek release, could be read to plead §

25  1983 claims), *overruled on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006); *Hansen v.*

26  *May*, 502 F.2d 728, 729-30 (9th Cir. 1974) (finding, where habeas petition "clearly . . . [did] not

18

1   challeng[e] any conviction or seek[] release from custody," but only sought return of property or

2   reimbursement, court could interpret petition as civil rights complaint).  However, provisions of

3   the Prison Litigation Reform Act of 1995 ("PLRA") may make it inappropriate to construe a

4   habeas petition as a civil rights complaint.  Due to the PLRA's filing fee requirements, its

5   provisions requiring *sua sponte* review of complaints, and its limits on the number of actions a

6   prisoner may be permitted to file *in forma pauperis*, a prisoner should not be obligated to proceed

7   with a civil rights action unless the prisoner clearly wishes to do so.  *See* 28 U.S.C. §§ 1915 &

8   1915A; 42 U.S.C. § 1997e; *Bunn v. Conley*, 309 F.3d 1002, 1007 (7th Cir. 2002) (stating courts

9   should not recharacterize nature of prisoner's claim because PLRA and AEDPA created "pitfalls

10  of different kinds for prisoners using the wrong vehicle"); *cf. Blueford v. Prunty*, 108 F.3d 251,

11  255 (9th Cir. 1997) (finding court should not convert civil rights action into habeas petition due

12  to implications of abuse of writ doctrine); *Trimble v. City of Santa Rosa*, 49 F.3d 583, 586 (9th

13  Cir. 1995) (same).  It is recommended that these claims be dismissed without prejudice instead of

14  converting these claims into a § 1983 action.

15                                    VI.  CONCLUSION

16          For the foregoing reasons, IT IS HEREBY ORDERED that Petitioner's requests for

17  judicial notice of the Board's (1) hearing decision fact sheet and proposed decision; (2) hearing

18  transcript from the July 11, 2002, hearing; and (3) hearing transcript from the August 27, 2008,

19  hearing, are GRANTED.

20          IT IS HEREBY RECOMMENDED that:

21          1.  Petitioner's application for writ of habeas corpus be DENIED; and

22          2.  Petitioner's claims regarding (1) "[a] refusal to recognize [Petitioner's] ADA status,"

23  Pet'r's Pet. 24; (2) "denial of assistance to one with [a] disability[,] and no access to a particular

24  are[a] of the prison necessary for his defense," *id.*; and (3) discriminatory retaliation, be

25  DISMISSED WITHOUT PREJUDICE.

26          These findings and recommendations are submitted to the United States District Judge

1   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one

2   days after being served with these findings and recommendations, any party may file written

3   objections with the court and serve a copy on all parties.  Such a document should be captioned

4   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

5   shall be served and filed within seven days after service of the objections.  Failure to file

6   objections within the specified time may waive the right to appeal the District Court's order.

7   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57

8   (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of

9   appealability should be issued in the event he elects to file an appeal from the judgment in this

10  case.  *See* Rule 11(a), Federal Rules Governing Section 2254 Cases (district court must issue or

11  deny certificate of appealability when it enters final order adverse to applicant).

12

13

14

15  DATED:       November 22, 2010.

16

17

18  _____

         TIMOTHY J BOMMER
19       UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26